# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 5, 2004 Session

# EVA MAE JEFFERIES v. MCKEE FOODS CORPORATION

### Appeal from the Chancery Court for Hamilton County
### No. 01-0004, Howell N. Peoples, Chancellor

---

### No. E2003-01260-SC-R3-CV - Filed August 23, 2004

---

In this workers' compensation case, the employer, McKee Foods Corporation, has appealed the trial court's award of 50% permanent partial disability to the body as a whole to the employee, Eva Mae Jefferies. The trial court's award of benefits was based on a medical impairment rating calculated under the Fifth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guidelines"), which was in effect at the time of trial. The employer's appeal was transferred to the full Supreme Court prior to a decision by the Special Workers' Compensation Appeals Panel. The employer contends in this Court that the trial court should have applied a medical impairment rating calculated under the Fourth Edition of the AMA Guidelines because the Fourth Edition was the edition in effect when the employee reached maximum medical improvement. Thus, the sole question for this Court is whether the trial court erred in awarding benefits using a medical impairment rating calculated under the Fifth Edition of the AMA Guidelines. After carefully examining the record and the relevant authorities, we find that in determining the extent of the employee's vocational disability, the trial court should have used a medical impairment rating calculated under the Fourth Edition of the AMA Guidelines. Accordingly, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

### Tenn. Code Ann. § 50-6-225(e)(3); Judgment of the Chancery Court Reversed; Case Remanded

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Bruce C. Bailey, Chattanooga, Tennessee, for the appellant, McKee Foods Corporation.

Gary W. Starnes, Chattanooga, Tennessee, for the appellee, Eva Mae Jefferies.

## OPINION

## I. Facts and Procedural History

The employee, Eva Mae Jefferies, age 63 at the time of trial, began working for the employer, McKee Foods Corporation, in 1987. Prior to that time, the employee, who is a high school graduate, worked in various factories performing manual labor. She has also worked as a cashier and a homemaker.

In 1997, the employee suffered work-related injuries to her neck and shoulder while performing repetitive work in the employer's plant. The employee sought medical treatment from Dr. Scott Hodges, an orthopedic surgeon, complaining of pain in her neck and left shoulder. After conservative treatment consisting of medication and physical therapy failed to alleviate the employee's problems, Dr. Hodges performed a cervical fusion surgery on her neck. This surgery involved removing a disk in the employee's neck and fusing the bones together. During several follow-up visits, Dr. Hodges noted that the employee's condition had improved, but she still reported having significant pain. The employee was still seeing Dr. Hodges when the case was tried.

In June 2000, the employee reached maximum medical improvement with respect to her neck injury. Using the Fourth Edition of the AMA Guidelines which was in effect at that time, Dr. Hodges gave the employee an 8% permanent anatomical impairment rating to the body as a whole for her neck injury.[1] Subsequent to the employee reaching maximum medical improvement, but before trial, the Fifth Edition of the AMA Guidelines was published. According to Dr. Hodges, the employee's work-related neck injury qualified her for a 25% medical impairment rating under the Fifth Edition of the Guidelines, even though her physical condition had not changed since she reached maximum medical improvement. Dr. Hodges testified that the only change was that the Fifth Edition of the Guidelines classified her injury differently.

In addition to being treated by Dr. Hodges, who focused his efforts mostly on the employee's neck injury, the employee was treated by another orthopedic surgeon, Dr. Channappa Chandra, for pain in her left shoulder and arm. Dr. Chandra performed surgery on the employee's shoulder to repair a torn rotator cuff. The employee reached maximum medical improvement for this injury in July 2002. Dr. Chandra assigned a 1% medical impairment rating for the shoulder injury based on the Fifth Edition of the AMA Guidelines. The employee was also evaluated by another orthopedic physician, Dr. Dennis Stohler, who rated her shoulder injury as a 3% impairment to the body as a whole under the Fifth Edition of the AMA Guidelines.

The employee returned to work following her surgeries. She soon retired, however, because she could no longer handle the physical demands of her job in light of her work-related injuries.

---

[1] Dr. Hodges assigned an additional 7% permanent impairment for pre-existing degenerative conditions that were not caused by the employee's work.

The parties stipulated that the employee's neck and shoulder injuries were work-related and compensable. They also agreed that the employee's recovery was limited to 2.5 times the applicable medical impairment rating. They disagreed over which medical impairment rating given by Dr. Hodges controlled–the 8% given under the Fourth Edition of the Guidelines or the 25% given under the Fifth Edition of the Guidelines. The trial court ruled that the medical impairment rating of 25% calculated under the Fifth Edition of the Guidelines should apply. The trial court then awarded benefits based on a finding of 50% vocational disability. The employer appealed, and the case was transferred to the full Supreme Court prior to a decision by the Special Workers' Compensation Appeals Panel. For the reasons explained below, we find that the trial court erred in accepting the medical impairment rating of 25% calculated under the Fifth Edition of the Guidelines.

## II. Standard of Review

This case calls into question the application of Tennessee Code Annotated section 50-6-204(d)(3) (1999), which requires medical impairment ratings to be based on the most recent edition of the AMA Guidelines. In workers' compensation cases, questions of statutory construction are reviewed de novo without a presumption of correctness. Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn. 1996). When construing a statute, our goal is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). Our interpretation of the workers' compensation laws is guided by "a consideration which is always before us in workers' compensation cases–that these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." Lindsey v. Smith & Johnson, Inc., 601 S.W.2d 923, 925 (Tenn. 1980).

## III. Analysis

The sole issue before this Court is whether, in determining the extent of the employee's vocational disability, the trial court erred in using the medical impairment rating of 25% given by Dr. Hodges under the Fifth Edition of the AMA Guidelines. The employer asserts that the initial medical impairment rating of 8% arrived at using the Fourth Edition of the AMA Guidelines should apply because that was the edition in effect when the employee reached maximum medical improvement in June 2000. The employer also points out, correctly, that Dr. Hodges testified that no change had occurred in the employee's condition between the time of his first impairment rating in June 2000 under the Fourth Edition of the Guidelines and his second impairment rating in October 2002 under the Fifth Edition of the Guidelines. The only difference was that the Fifth Edition of the Guidelines classified the employee's injuries differently.

Under Tennessee law, the maximum permanent partial disability award that an employee may receive is 2.5 times the "medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment (American Medical Association), the Manual for Orthopedic Surgeons in Evaluating Permanent Physical

Impairment (American Academy of Orthopedic Surgeons), or in cases not covered by either of these, an impairment rating by any appropriate method used and accepted by the medical community." Tenn. Code Ann. § 50-6-241(a)(1) (1999).[2]  Tennessee law further requires that a physician preparing a medical report or disability assessment "utilize the most recent edition of [the AMA Guidelines] in determining the degree of anatomical impairment."  Tenn. Code Ann. § 50-6-204(d)(3) (Supp. 2003).[3]  The rationale for this requirement is to provide a measure of "uniformity and fairness for all parties" in workers' compensation cases.  Id.

        It appears to us that Tennessee Code Annotated section 50-6-204(d)(3) is susceptible to three possible interpretations regarding when the "most recent edition" of the AMA Guidelines is to be determined.  First, the most recent edition could mean the Guidelines in effect at the time of the employee's injury.  Second, the most recent edition could mean the Guidelines in effect at the time the employee reaches maximum medical improvement.  Third, the most recent edition could mean the Guidelines in effect at the time of trial.  The statute itself does not address the matter.  The trial court did not state why it chose to apply Dr. Hodges's second impairment rating based on the Fifth Edition of the Guidelines, but presumably the trial court did so because that was the edition in effect at the time of trial.

        In support of the trial court's ruling, the employee relies upon Humphrey v. David Witherspoon, Inc., 734 S.W.2d 315, 317 (Tenn. 1987), in which this Court found that a physician's testimony should not have been permitted where the physician had failed to use the most recent version of the AMA Guidelines.  Humphrey does not resolve the question currently before the Court, however, because in Humphrey the relevant statute required physicians to use the 1977 AMA Guidelines or subsequent editions, and the physician in that case relied on a 1971 version of the Guidelines.  Id.  Thus, Humphrey is not helpful in deciding this case, as the physician there relied on an outdated edition in determining the worker's medical impairment rating.  Humphrey is further distinguishable from this case because in Humphrey the record was silent as to whether there was any difference between the 1971 Guidelines relied upon by the doctor and the Guidelines in effect in 1977.  Id.  In the present case, the difference between the Guidelines at issue has been established, and it is a significant one–8% under the Fourth Edition and 25% under the Fifth Edition.

---

[2]The legislature recently amended Tennessee Code Annotated section 50-6-241 to provide for a multiplier of 1.5 times the medical impairment rating in cases where the injury occurs on or after July 1, 2004.

[3]Tennessee Code Annotated section 50-6-204(d)(3) reads:  "To provide uniformity and fairness for all parties, any medical report prepared by a physician furnishing medical treatment to a claimant shall use the American Medical Association Guides to the Evaluation of Permanent Impairment, (American Medical Association) or the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment, (American Academy of Orthopedic Surgeons).  **A physician shall utilize the most recent edition of either publication in determining the degree of anatomical impairment.**  A practitioner shall be required to give an impairment rating based on one (1) of the two (2) publications noted above."  (Emphasis added).

The employee also relies upon Harness v. CNA Insurance Company, 814 S.W.2d 733 (Tenn. 1991). In that case, two physicians gave opinions of permanent impairment using two different versions of the Guidelines, one of which was outdated. Id. at 734. We found that the testimony of the physician who relied on the outdated version of the Guidelines could be considered on the question of *vocational* disability because permanency had been established by the physician who relied on the then current version of the Guidelines. Id. at 735. Like Humphrey, however, Harness does not directly answer the question currently before the Court.

In yet another case relied upon by the employee, Jackson v. Shelby County, No. W2002-02627-COA-R3-CV, 2003 WL 21756692, **1-2 (Tenn. Ct. App. July 28, 2003), one physician gave an impairment rating using the Fourth Edition of the AMA Guidelines, while a second physician gave a later impairment rating using the Fifth Edition. The intermediate court did not address the issue involved in the present case, however, because the physician who used the Fourth Edition testified that he would have assigned the same impairment rating had the Fifth Edition been in effect at the time he made his assessment. Thus, the Jackson case, along with the other decisions cited by the employee, offers little help in resolving the question presented in this case.

As noted above, the express purpose of the statute requiring the use of the AMA Guidelines in providing permanent disability assessments is to provide "uniformity and fairness to all parties." Tenn. Code Ann. § 50-6-204(d)(3). In light of this purpose, we believe that the "most recent edition" language in section 50-6-204(d)(3) refers to the edition in effect at the time the employee reaches maximum medical improvement. There are several reasons for our conclusion. First, a *permanent* medical disability rating can be made only once the worker has recovered to the point of maximum medical improvement. A disability rating given prior to that time would be meaningless, as the employee's condition will continue to change. Thus, it would make little sense to accept disability ratings using Guidelines in effect at the time of the worker's injury, or even those that go into effect after the injury but before the worker reaches maximum medical improvement. See Ransier v. State Indus. Ins. Sys., 766 P.2d 274, 276 (Nev. 1988) (rejecting an argument that an employee's disability rating should be determined using AMA Guidelines in effect at the time of injury).

Second, if we were to decide this case the way that the employee urges us to decide it, any party dissatisfied with a medical impairment rating could delay resolution of the case until the next edition of the Guidelines is released in hopes of receiving a more favorable medical rating. Clearly, the law ought not sanction or encourage such a result, as workers' compensation cases should be resolved as expeditiously as possible. See Tenn. Code Ann. § 50-6-225(f) (Supp. 2003) (stating that "[t]he trial of all [workers' compensation] cases . . . shall be expedited by . . . [g]iving all such cases priority over all cases on the trial and appellate dockets. . . ."). The course of a worker's medical treatment, not the course of litigation, should drive his or her medical impairment rating.

In short, we believe that giving parties an incentive to delay resolution of workers' compensation cases, not to mention manipulate the outcome, would be counterproductive. Thus,

we hold that in determining the extent of an employee's vocational disability, courts should use medical impairment ratings calculated under the edition of the AMA Guidelines in effect at the time the employee reaches maximum medical improvement. The rule we have adopted today best achieves the goal of "uniformity and fairness to all parties." Tenn. Code Ann. § 50-6-204(d)(3).[4]

## IV. Conclusion

For the reasons stated above, we hold that the trial court erred in basing the employee's award of benefits on a medical impairment rating calculated under the Fifth Edition of the AMA Guidelines. Accordingly, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed to the employee, Eva Mae Jefferies, and her surety, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[4]The legislature recently amended Tennessee Code Annotated sections 50-6-204(d)(3) and 50-6-102 to provide that the edition of the Guidelines in effect on the date of injury is the edition applicable to the claim. The statutory changes are not applicable to this case, however, as they apply to injuries that occur on or after July 1, 2004. Even if the change in the law did apply to this case, the result would be the same because the Fourth Edition of the Guidelines was in effect when the employee was injured and when she reached maximum medical improvement. Thus, the trial court would have to be reversed under either the new law or the law applicable to this case.